UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NNYANA MASOLOKO and KEFILWE LEKUNTWANE individually, and on behalf of all others similarly situated, | : : : : | Civil Action No.: 3:22-cv-1658 (    ) |
| Plaintiff, | : : | |
| v. | : : : | |
| YOUR FAMILY HOME CARE LLC, JENNIFER ROSS, RACHEL FAITH LORENZEN and DELROY ROSS, | : : : : | June 15, 2022 |
| Defendants. | : : | |

<u>PLAINTIFFS' COLLECTIVE AND CLASS ACTION COMPLAINT</u>

## I.    INTRODUCTION

1.    Employers must pay overtime to employees who work over forty hours in a week. 29 U.S.C. § 201, *et. seq.*; C.G.S. § 31-58 *et. seq.* Third-party employers of "live-in domestic service" employees have a duty to pay them overtime. 29 C.F.R. § 552.109(c). In determining the number of hours worked by the live-in worker, the employee and the employer may exclude, "by agreement between themselves," the amount of sleeping time, mealtime and other periods of complete freedom from all duties. 29 C.F.R. § 552.102(a). In the case of an employee who resides on the premises, the employer "shall keep a copy of the agreement specified by § 552.102" and make, keep, and preserve a record showing the exact number of hours worked by the live-in domestic service employee. 29 C.F.R. § 552.110(b) (emphasis added). In Connecticut, this agreement must be "in writing." C.G.S. § 31-76b(2)(D).[1]

---
[1] The full text of C.G.S. § 31-76b(2)(D) reads:

2.     Employers of live-in caregivers, who pay a day rate to these non-exempt employees, must pay overtime by dividing their weekly pay by their weekly hours and paying half the resulting regular rate for all overtime hours. 29 C.F.R. § 778.112.

3.     Employers must pay wages to employees for their meal breaks if that time is spent predominantly for the benefit of the employer. *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 64 (2d Cir.1997).

4.     Employers of "live-in domestic service" employees must keep accurate records" showing the exact number of hours worked by the live-in domestic service employee[s]," including meals breaks that they worked through. 29 C.F.R. § 552.110(b).

5.     When a "live-in domestic service" employee's sleep period is "interrupted by a call to duty, the interruption must be counted [by the employer] as hours worked." 29 C.F.R. § 785.22(b). "[I]f the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time." Id. (emphasis added).

6.     "Where … an employer furnishes lodging to his employees in addition to cash wages the reasonable cost or the fair value of the lodging (per week) must be added to the cash wages before the regular rate is determined." 29 C.F.R. § 778.116. Also see United States Department of Labor, Field Assistance Bulletin No. 2015-1, December 17, 2015 ("FAB No. 2015-1"), at p 11.

---

Notwithstanding the provisions of this subdivision, when an individual employed by a third-party provider to provide "companionship services", as defined in the regulations of the federal Fair Labor Standards Act,1 is required to be present at a worksite for a period of not less than twenty-four consecutive hours, such individual and his or her employer may agree in writing to exclude a regularly scheduled sleeping period of not more than eight hours from hours worked, provided (i) adequate on-site sleeping facilities are furnished to such individual, and (ii) such individual receives at least five hours of sleep time. If the scheduled sleeping period is more than eight hours, only eight hours will be excluded. If the scheduled sleeping period is interrupted by an assignment to work, the interruption shall be counted as hours worked. If such individual does not receive at least five hours of sleep time during the scheduled sleeping period, the entire sleeping period shall be considered hours worked. The provisions of this subparagraph shall be effective on and after the effective date of the United States Department of Labor's Final Rule concerning the Application of the federal Fair Labor Standards Act to Domestic Service published in the Federal Register of October 1, 2013.

7. "[T]he reasonable cost to the employer of furnishing board, lodging, or other facilities (or the fair value thereof) must be included in the employee's [regular rate] of pay for the purposes of computing [overtime] pay." FOH § 30c01(c).

8. Section 3(m) applies to lodging furnished by the employer as compensation to an employee regardless of whether the employer calculates charges for such lodging as additions to or deductions from wages. 29 C.F.R. § 531.29. In other words, it is not relevant for purposes of calculating an employee's wages whether the employee has received housing free of charge (additions to cash wages) or has paid rent as a deduction from a paycheck or otherwise (deductions from wages). FAB No. 2015-1, at p 13. Any contribution toward wages the consumer (or the consumer's family or household) has made, including by paying for lodging provided to the employee, may be counted toward the third party employer's wage obligation. *Id.* at n 13.

9. Here, Defendants paid a day rate to their live-in Caregivers but did not pay overtime as required by law, even though Defendants credited their live-in Caregivers with only 98 hours (14 hours x 7 live-in shifts) per workweek, with 58 overtime hours.

10. Defendants do not have any agreement in writing with their live-in caregivers permitting them to exclude meal periods and sleeping time from each live-in shift their live-in caregivers worked. As such, Defendants improperly excluded meal periods and sleeping time from each live-in shift their live-in caregivers worked.

11. Also, Defendants have not provided any records of the value of food, the additions to cash wages for meals provided for purposes of computing overtime will be 150 percent of the statutory minimum hourly wage for each day or $10.88 (1.5 x $7.25/hour). 29 C.F.R. § 552.100(c).

12.     Furthermore, because Defendants have not provided any records of the value of lodging, the additions to cash wages for lodging provided for purposes of computing overtime will be seven and one-half times the statutory minimum hourly wage for each week lodging is furnished, or $54.38 (7.5 x $7.25/hour). 29 C.F.R. § 552.100(d). Also see, *Mmolawa v. Diligent Enterprises, Inc.,* No. 19-CR-300 (VLB), 2020 WL 7190819, at *9 (D. Conn. Dec. 7, 2020) ("[I]n the absence of employer records of the actual cost of the food and lodging, the most the Defendants could have deducted as a credit against the minimum wage pursuant to U.S. DOL regulations was seven and a half times the federal minimum wage. 29 C.F.R. § 552.100(d)(7.5 × $7.25 per hour = $54.38 per week).").

13.     Here also, Defendants employ Home Health Care Aides ("HHCAs") or "live-in Caregivers" and assign them to live with Defendants' clients, who require assistance caring for themselves throughout the day. Defendants' live-in Caregivers perform non-exempt tasks including assisting Defendants' clients with personal care and activities of daily living such as showering, toileting, dressing, feeding, ambulating; assisting with meal planning and preparation; assisting with light home maintenance such as laundry, vacuuming, linen change, bathroom/kitchen cleaning; provide medical reminders; perform solution for dementia or Alzheimer's and; provide 24 hour presence.

14.     Defendants' live-in Caregivers are routinely interrupted during their scheduled mealtimes to assist Defendants' clients.

15.     Defendants' live-in Caregivers are frequently interrupted during the night to help Defendants' clients use the restroom or turn them over in bed to prevent bedsores.

Defendants' live-in Caregivers routinely fail to get five hours of uninterrupted sleep time because of these frequent interruptions.

16. Defendants failed to record all hours worked by their live-in Caregivers. Defendants assign their live-in Caregivers to live with their clients, knowing their work routinely occurs at all hours of the day. Defendants provided their live-in Caregivers with timesheets to record the interruptions to their meal breaks and sleep times. Defendants' live-in Caregivers recorded the times they are interrupted during their meals and sleep time. Defendants do not pay their live-in Caregivers overtime for the hours they spend performing that work. Defendants have actual and constructive knowledge that their live-in Caregivers work during their meal breaks and sleep times. Despite these reports, Defendants never accurately recorded and pay for all the hours Plaintiffs and other live-in Caregivers worked.

17. As a result, Defendants kept hundreds of thousands of dollars in wages that it should have paid to Plaintiffs and the class and collectives, all in violation of state and federal wage and hour laws.

## II. JURISDICTION AND VENUE

18. This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

19. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 since they are so related to her FLSA claims that they form part of the same case or controversy.

20. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) because the acts or omissions giving rise to claims in this Complaint took place in this judicial district.

### III.    THE PARTIES

21. Plaintiff, Nnyana Masoloko, ("Plaintiff" or "Ms. Masoloko") is an Individual who at all times relevant to this matter, resided within this judicial district. She worked as a live-in Caregiver for Defendants from approximately October 26, 2020, to approximately April 4, 2022.

22. Plaintiff, Kefilwe Lekuntwane, ("Plaintiff" or "Ms. Lekuntwane") is an individual residing within this judicial district. She worked as a live-in Caregiver for Defendants from approximately January 15, 2020, to approximately February 4, 2022.

23. Defendant Your Family Home Care, LLC ("YFHC") is a corporation organized and existing under the laws of the state of Connecticut.  Its principal place of business is located at 30 Lafayette Square, Suite 109, Vernon, CT 06066.

24.    At all relevant times, Defendant YFHC employed, and/or continues to employ, Plaintiff and each of the live-in Caregivers within the meaning of the FLSA and the Connecticut Minimum Wage Act.

25.    Defendant Jennifer Ross is a member and named principal of Defendant YFHC on Connecticut's Secretary of State Business Listings.

26.    As such, Defendant Jennifer Ross actively manages, supervises, and directs the day-to-day business affairs and operations of Defendant YFHC.

27.    As owner and named principal of Defendant YFHC, Defendant Jennifer Ross directly, or through her delegates, interviewed and hired personnel, determined their

rates of pay and company policies, assigned duties and answered questions from employees regarding their pay.

28.     As such, Jennifer Ross acted at all times material herein directly and indirectly in the interest of YFHC in relation to their employees and was, and is, therefore, an employer of said employees within the meaning of the Fair Labor Standards Act.

29.     At all relevant times, Defendant Jennifer Ross, as owner and president or vice president and the managing principal of Defendant YFHC, has been "ultimate responsible authority" within YFHC "to set the hours of employment" and to "pay wages" as to the named Plaintiffs and all of Defendants' live-in Caregivers and is therefore "the specific cause of the wage violation" alleged within the meaning of the Connecticut Minimum Wage Act.

30.     Defendant Rachel Faith Lorenzen is a member and named principal of Defendant YFHC on Connecticut's Secretary of State Business Listings.

31.     As such, Defendant Rachel Faith Lorenzen actively manages, supervises, and directs the day-to-day business affairs and operations of Defendant YFHC.

32.     As owner and named principal of Defendant YFHC, Defendant Rachel Faith Lorenzen directly, or through her delegates, interviewed and hired personnel, determined their rates of pay and company policies, assigned duties and answered questions from employees regarding their pay.

33.     As such, Rachel Faith Lorenzen acted at all times material herein directly and indirectly in the interest of YFHC in relation to their employees and was, and is,

therefore, an employer of said employees within the meaning of the Fair Labor Standards Act.

34.     At all relevant times, Defendant Rachel Faith Lorenzen, as owner and president or vice president and the managing principal of Defendant YFHC, has been "ultimate responsible authority" within YFHC "to set the hours of employment" and to "pay wages" as to the named Plaintiffs and all of Defendants' live-in Caregivers and is therefore "the specific cause of the wage violation" alleged within the meaning of the Connecticut Minimum Wage Act.

35.     Defendant Delroy Ross is a member and named principal of Defendant YFHC on Connecticut's Secretary of State Business Listings.

36.     As such, Defendant Delroy Ross actively manages, supervises, and directs the day-to-day business affairs and operations of Defendant YFHC.

37.     As owner and named principal of Defendant YFHC, Defendant Delroy Ross directly, or through his delegates, interviewed and hired personnel, determined their rates of pay and company policies, assigned duties and answered questions from employees regarding their pay.

38.     As such, Delroy Ross acted at all times material herein directly and indirectly in the interest of YFHC in relation to their employees and was, and is, therefore, an employer of said employees within the meaning of the Fair Labor Standards Act.

39.     At all relevant times, Defendant Delroy Ross, as owner and president or vice president and the managing principal of Defendant YFHC, has been "ultimate responsible authority" within YFHC "to set the hours of employment" and to "pay

8

wages" as to the named Plaintiffs and all of Defendants' live-in Caregivers and is therefore "the specific cause of the wage violation" alleged within the meaning of the Connecticut Minimum Wage Act.

40. At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

41. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

42. Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C.§216(b). The named Plaintiffs' written consent is attached hereto and incorporated herein by reference.

## IV.   LEGAL PRINCIPLES

43. Employers must pay overtime to their non-exempt workers who work over 40 hours in a work week. 29 U.S.C. Sec. 201, *et seq*.; C.G.S. Sec. 31-58, *et seq*.

44. Employers of live-in caregivers, who pay a day rate to these non-exempt employees, must pay overtime by dividing their weekly pay by their weekly hours and paying half the resulting regular rate for all overtime hours. 29 C.F.R. §  778.112.

45. "Where … an employer furnishes lodging to his employees in addition to cash wages the reasonable cost or the fair value of the lodging (per week) must be added to the cash wages before the regular rate is determined." 29 C.F.R. § 778.116. Also see United States Department of Labor, Field Assistance Bulletin No. 2015-1, December 17, 2015 ("FAB No. 2015-1"), at p 11.

46.     "[T]he reasonable cost to the employer of furnishing board, lodging, or other facilities (or the fair value thereof) must be included in the employee's [regular rate] of pay for the purposes of computing [overtime] pay." FOH § 30c01(c).

47.     Section 3(m) applies to lodging furnished by the employer as compensation to an employee regardless of whether the employer calculates charges for such lodging as additions to or deductions from wages. 29 C.F.R. § 531.29. In other words, it is not relevant for purposes of calculating an employee's wages whether the employee has received housing free of charge (additions to cash wages) or has paid rent as a deduction from a paycheck or otherwise (deductions from wages). FAB No. 2015-1, at p 13. Any contribution toward wages the consumer (or the consumer's family or household) has made, including by paying for lodging provided to the employee, may be counted toward the third party employer's wage obligation. *Id.* at n 13.

48.     Third-party employers of "live-in domestic service" employees have a duty to pay them overtime.  29 C.F.R. § 552.109(c).

49.      In determining the number of hours worked by the live-in worker, the employee and the employer may exclude, "by agreement between themselves," the amount of sleeping time, mealtime and other periods of complete freedom from all duties.  29 C.F.R. § 552.102(a).

50.     In the case of an employee who resides on the premises, the employer "shall keep a copy of the agreement specified by § 552.102" and make, keep, and preserve a record showing the exact number of hours worked by the live-in domestic service employee. 29 C.F.R. § 552.110(b) (emphasis added).  In Connecticut, this agreement must be "in writing."  C.G.S. § 31-76b(2)(D).

51.     Employers must pay wages during an employee's meal breaks if the employee's mealtime is spent predominantly for the benefit of the employer. *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 64 (2d Cir.1997); 29 C.F.R. Sec. 785.19 and 29 C.F.R. Sec. Sec. 552.102.

52.     Defendants' live-in Caregivers are routinely interrupted during their scheduled mealtimes to assist Defendants' clients.

53.     Defendants' live-in Caregivers are frequently interrupted during the night to help Defendants' clients use the restroom or turn them over in bed to prevent bedsores. Defendants' live-in Caregivers routinely fail to get five hours of uninterrupted sleep time because of these frequent interruptions.

54.     Employers have a "non-delegable" duty under the FLSA to maintain accurate records of its employees' hours.  *Kuebel v. Black & Decker Inc*., 643 F.3d 352, 363 (2d Cir. 2011) (citing 29 U.S.C. § 211(c)); *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959) (Friendly, J) (employers cannot discharge their duty of accurate record keeping and appropriate payment to their employees).

55.     "[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours."  *Kuebel,* 643 F.3d at 363; *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir.1998).

56.     Employers are responsible for paying overtime even when employees do not accurately record their time.  *See Kuebel*, 643 F.3d at 363 ("[T]he fact that an employee is required to submit his own timesheets does not necessarily preclude him from invoking *Anderson's* standard where those records appear to be incomplete or

inaccurate."); *also McGrath v. Cent. Masonry Corp.*, 2009 U.S. Dist. LEXIS 94870, *17 (D. Colo. Sept. 29, 2009) ("The burden to maintain accurate records falls on the employer regardless of whether the employee is responsible for recording his own hours on a time sheet. … Indeed, the Supreme Court's reasoning in *Anderson* makes it clear that an employer should not benefit from its own failure to maintain an adequate and accurate record-keeping system.").

V.    **FACTS**

57.    Defendants hired Ms. Masoloko  to work as a live-in Caregiver on October 26, 2020, and she worked for Defendants until April 4, 2022.

58.    Defendants hired Ms. Lekuntwane to work as a live-in Caregiver on November 15, 2019, and she worked for Defendants until February 4, 2022.

59.    At all relevant times, Defendants have employed 111 or more live-in Caregivers in Connecticut.

60.    Defendants employ "live-in  Caregivers" including Plaintiffs and assign them to live with Defendants' clients, who require assistance caring for themselves throughout the day.

61.     Defendants' live-in Caregivers perform non-exempt tasks including assisting Defendants' clients with personal care and activities of daily living such as showering, toileting, dressing, feeding, ambulating; assisting with meal planning and preparation; assisting with light home maintenance such as laundry, vacuuming, linen change, bathroom/kitchen cleaning; provide medical reminders; perform solution for dementia or Alzheimer's and; provide 24 hour presence.

62.     Defendants' job responsibilities and duties for their live-in caregivers include being "on call." In other words, Plaintiffs and all former and current live-in caregivers were required to "being accessible via telephone [at] all times" to provide care to Defendants' clients at the clients' homes.

63.     In particular, Defendants' live-in Caregiver's non-exempt duties include: activities of daily living, including cooking for and serving breakfast, lunch and dinner to customer; bathing customer as needed; assisting customer change clothing and underwear/diaper during the day and night as needed; helping customer put on and take off customer's clothes every day; sitting with client and watch customer eat food and watch television and; physically watching over customer "at all times" and remaining within eye and earshot of customer, including placing an electronic monitoring device in customer's room to monitor to customer at all times including at nighttime; assisting customer with incontinence; assisting customer with personal hygiene; assisting customer with taking medication and; escorting customer for medical appointments.

64.     Defendants assign their live-in Caregivers to sleep on-site so that the live-in Caregivers can help and be with their clients "at all times" due to the severe medical conditions of the clients, such as Alzheimer's disease, Dementia, amongst other medical conditions.

65.     Defendants assign their live-in Caregivers to provide non-medical Home Care services to Defendants' clients, including for example, general housekeeping companionship personal care, chores, respite care, medical reminder, transportation to appointments and for activities, meal preparation, turning client over in bed and other individual needs of the clients.

66. Defendants have a policy or practice of crediting their live-in caregiver with14 hours per day during each live-in shift of 24 hours.

67. Defendants paid a day rate to their live-in Caregivers but did not pay overtime as required by law, even though Defendants credited their live-in Caregivers with only 98 hours (14 hours x 7 live-in shifts) per workweek, with 58 overtime hours.

68. For example, during the week of April 19, 2021, to April 25, 2021, Ms. Lekuntwane worked as a live-in Caregiver for all seven days of the week. Defendant paid her a day rate of $194.00 for 7 days of that week.

69. Over a 7-day workweek, Ms. Lekuntwane was credited only 98 hours of work time, 58 hours as overtime work time.

70. Defendants paid the Plaintiffs and all other live-in Caregivers a day rate for their work and did not calculate and pay overtime premiums as required by 29 C.F.R. § 778.112.

71. During this week of April 19, 2021, to April 25, 2021, Defendants paid Ms. Lekuntwane a total of $1,358.00 for working 7 full days at the day rate of $194 that week, with a credit of 98 hours work time.

72. Defendants should have calculated Ms. Lekuntwane's overtime by dividing $1,358.00 by 98 hours (7 live-in shifts x 14 hours), to determine her hourly rate of $13.86 ($1,358/98).

73. Defendants were required to pay Ms. Lekuntwane one and a half times that hourly rate for the hours she worked over forty.

74. Had Defendants furnished the proper weekly paystubs to Ms. Lekuntwane

as mandated by Conn. Gen. Stat. Ann. § 31-13a, the paystubs for the workweek of April 19, 2021, to April 25, 2021, should have reflected the following:

    a.   Hourly rate of Pay: $13.86 per hour

    b.   Straight pay: 40 hours x $13.86/hour = $554.40

    c.   Overtime pay: 58 hours x $13.86/hour x 1.5 = $1,205.82

    d.   Gross Wage: $1,760.22

75.     In this workweek, Defendants underpaid Ms. Lekuntwane, **$402.22** ($1,760.22 - $1,358.00).

76.     In addition to failure to pay overtime as shown above, Defendants furnished food to Ms. Lekuntwane and other live-in Caregivers but did not add the reasonable cost or the fair value of the food and lodging (per week) to their cash wages before determining the regular rate for purposes of computing the proper overtime premium as required by 29 C.F.R. § 778.116.

77.     Defendants furnished food to Ms. Lekuntwane and other live-in Caregivers but did not provide them with any records of the value of the food.

78.     Therefore, additions to cash wages for meals provided for purposes of computing overtime will be 150 percent of the statutory minimum hourly wage for each day or $10.88 (1.5 x $7.25/hour). 29 C.F.R. § 552.100(c).

79.     Furthermore, Defendants furnished lodging to Ms. Lekuntwane and other live-in Caregivers but did not provide them with any records of the value of lodging.

80.     Therefore, the additions to cash wages for lodging provided for purposes of computing overtime will be seven and one-half times the statutory minimum hourly

wage for each week lodging is furnished, or $54.38 (7.5 x $7.25/hour). 29 C.F.R. §

552.100(d).

81.     The additions to cash wage for Plaintiffs and other live-in Caregivers for

food, for purposes of overtime pay, is $76.16 per week ($10.88 x 7).

82.      The additions to cash wage for Plaintiffs and other live-in Caregivers

for lodging, for purposes of overtime pay, is $54.38 per week.

83.     Defendants should have calculated the proper overtime premium by

adding $54.38 (value of lodging) and $76.16 (value of food) to  $1,358.00 (cash wage)

and then dividing the total by 98 hours worked, resulting in a regular rate of $15.19 per

hour ($1,488.54 ÷ 98 hours).

84.     Had Defendants furnished the proper weekly paystubs to their live-in

Caregivers as mandated by Conn. Gen. Stat. Ann. § 31-13a, the paystubs for the

workweek of April 19, 2021, to April 25, 2021, should have reflected the following:

    e.   Regular rate of Pay: $15.19 per hour

    f.   Straight pay: 40 hours x $15.19/hour = $607.60

    g.   Overtime pay: 58 hours x $15.19/hour x 1.5 = $1,321.53

    h.   Gross Wage: $1,929.13

85. For this workweek of April 19, 2021, to April 25, 2021, Defendants owe Ms.

Lekuntwane, **$168.91** ($1,929.13 - $1,760.22) for this workweek for furnishing food and

lodging and improperly computing her overtime premium.

86. Defendants partially took section 3m credit and voluntarily waived or

abandoned the remainder of their section 3(m) credit when they did not deduct the value

of food and lodging ($130.54) from the straight pay due their live-in Caregivers during

each workweek they worked. Defendants denied their live-in Caregivers additional wages due when Defendants voluntarily waived their own section 3(m) credit allowance. Plaintiffs and other live-in Caregivers did not waive their rights to the additional wages due them from the proper computation of the overtime premium for the overtime hours they worked.

87. Defendants and their live-in Caregivers, including Plaintiffs did not have any copy of agreement between themselves to exclude the amount of mealtime and other periods of complete freedom from all live-in duties worked.

88. Defendants and their live-in Caregivers, including Plaintiffs did not have any agreement in writing between themselves, to exclude the amount of mealtime and other periods of complete freedom from all live-in duties worked.

89. Defendants required Plaintiffs and other live-in caregivers to be "on call." In other words, Plaintiffs and all former and current live-in caregivers were required to "being accessible via telephone [at] all times" to provide care to Defendants' clients at the clients' homes.

90. Defendants improperly deducted the full 2 hours for meal breaks from each live-in shift worked.

91. Defendants did not qualify to exclude 2-hours for bona fide meal period from the hours Plaintiffs and other live-in Caregivers worked. As such, Defendants did not pay Plaintiffs and other live-in Caregivers overtime for the exact or all of the hours they worked.

92. Also, during her employment, Plaintiffs worked during her meal breaks to provide assistance to Defendants' client who required constant monitoring.

93. Plaintiffs reported to her supervisor that she was working during her meal breaks to provide assistance to their client Defendants improperly deducted the full 14 hours for meal breaks each week although Defendants knew or had constructive knowledge that Plaintiffs worked through her lunch breaks to provide assistance to its clients.

94. Defendants and their live-in Caregivers, including Plaintiffs did not have any copy of the agreement between themselves, to exclude the amount of sleep time from all live-in duties worked.

95. Defendants and their live-in Caregivers, including Plaintiffs did not have any agreement in writing between themselves, to exclude the amount of sleep time from all live-in duties worked.

96. Defendants required Plaintiffs and other live-in caregivers to be "on call." In other words, Plaintiffs and all former and current live-in caregivers were required to "being accessible via telephone [at] all times" to provide care to Defendants' clients at the clients' homes.

97. Defendants improperly deducted the full 8 hours for sleep time from each live-in shift worked.

98. Defendants did not qualify to exclude 8-hours for bona fide regularly scheduled sleep periods from the hours Plaintiffs and other live-in Caregivers worked. As such, Defendants did not pay Plaintiffs and other live-in Caregivers overtime for the exact or all of the hours they worked.

99. Plaintiffs and other live-in Caregivers are or were frequently interrupted during their sleep and meal breaks to care for Defendants' clients.

100.    In fact, Defendants' clients frequently interrupted Plaintiffs and other live-in Caregivers so much that they were unable to have at least five hours of uninterrupted sleep time per night.

101.    Defendants were aware of these sleep interruptions at night because Plaintiffs and other live-in Caregivers, from time to time, informed Defendants of these interruptions. But Defendants never paid Plaintiffs and other live-in Caregivers for the time they worked when their sleep was interrupted at night time.

102.    Defendants also failed to accurately record all hours worked by Plaintiffs and other live-in Caregivers when their sleep was interrupted at night time.

103.    Defendants improperly deducted the full 56 hours for sleep time each week although Defendants knew or had constructive knowledge that Plaintiffs' sleep was so frequently interrupted to provide assistance to Defendants' clients that she rarely, if ever, got five consecutive hours of uninterrupted sleep during the night.

104.    Defendants failed to ensure that they accurately recorded all the work their live-in Caregivers, including Plaintiffs, performed during their meal breaks and when their sleep time was interrupted to care for their clients.

105.    As a result of the foregoing, Defendants knowingly and willfully failed to pay Plaintiffs and the other live-in Caregivers the full wages that they were due for each workweek they worked and instead Defendants retained those wages for their own use and benefit.

106.    The Defendants and Plaintiffs, through their respective counsel agreed that the statute of limitations will be tolled for the Plaintiffs and the class members from June 15, 2022, until the date of the filing of this lawsuit, so that the parties could attempt to

settle this matter pre-litigation. Thus, the statute of limitations does not start to run on the date of filing this complaint but on June 15, 2022. Therefore, the claims of Plaintiffs and the class are for the class period of June 15, 2020, until the present.

## VI. THE COLLECTIVE ACTION

107.    Plaintiffs bring Counts One and Three on behalf of themselves and all other live-in Caregivers Defendants employed during the period of June 15, 2019, until the date of final judgment in this matter who Defendants assigned to "live" with their clients.

108.    Plaintiffs bring this count under 29 U.S.C. § 216(b) of the Fair Labor Standards Act. Plaintiffs and the other live-in Caregivers are similarly situated in that they are all subject to Defendants' common plan or practice of requiring them to live on the premises of their clients because they needed assistance at all hours, and failing to pay for working through their meal breaks and for interruption to sleeping period; failing to add the fair value of food and lodging to Plaintiffs' and other live-in Caregivers' cash wage for the purposes of computing overtime pay; failing to document all hours worked; failing to pay overtime premium for overtime hours when Defendants paid a day rate to Plaintiff and other live-in Caregivers and; improper exclusion of sleep time and meal periods from hours worked without the required agreement in writing to do so.

## VII. THE CONNECTICUT RULE 23 CLASS

109.    Plaintiffs bring Counts Two and Four under the Connecticut Minimum Wage Act, C.G.S. §§ 31-58 *et seq*., and Rule 23 of the Federal Rules of Civil Procedure, for themselves and on behalf of a class consisting of all "live-in" live-in Caregivers

Defendants employed in Connecticut during the period of June 15, 2020, until the date of final judgment in this matter who worked for Defendants.

110.    Class certification for these Connecticut law claims is appropriate under Fed. R. Civ. P. 23 (a) and Fed. R. Civ. P. 23 (b)(3) because all the requirements of the Rules are met.

111.    The class is so numerous that joinder of all members is impracticable. Upon information and belief, Defendants employed 111 or more live-in Caregivers who worked at least one 24-hours overnight shift in Connecticut during the past two (2) years.

112.    There are questions of law and fact common to the class, including whether the putative class members worked overtime but were not paid overtime in violation of Connecticut law, whether Defendants failed to pay the class members for working through their meal breaks during each live-in shift; whether Defendants failed to pay the class members for working when their sleep time was interrupted at nighttime during each live-in shift; whether Defendants recorded and paid the class members for all hours worked during each live-in shift; whether Defendants failed to add the fair value of food and lodging to Plaintiffs' and other live-in Caregivers' cash wage for the purposes of computing overtime pay; whether Defendants paid overtime premium for overtime hours when Defendants only paid a day rate for each day worked and; whether Defendants improperly excluded sleep time and meal periods from hours worked without the required agreement in writing to do so.

113.    The named Plaintiffs' claims are typical of those of the class members. Plaintiffs' claims encompass the challenged practices and course of conduct of Defendants. Furthermore, Plaintiffs' legal claims are based on the same legal theories as

the claims of the putative class members. The legal issues as to which federal and state laws are violated by such conduct apply equally to Plaintiffs and to the class.

114. The named Plaintiffs will fairly and adequately protect the interests of the class. The Plaintiffs' claims are not antagonistic to those of the putative class and they have hired counsel skilled in the prosecution of class actions.

115. Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. This proposed class action under Fed. R. Civ. P. 23 presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member and maximizes recovery to them.

## VIII.  LEGAL CLAIMS

**COUNT ONE:**          *Nnyana Masoloko and Kefilwe Lekuntwane, individually and on behalf of others similarly situated v. Your Family Home Care, LLC*: **VIOLATION OF THE FAIR LABOR STANDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

116. Based on the foregoing, Defendant Your Family Home Care, LLC's conduct in this regard was a willful violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

117. Plaintiffs and all other similarly situated live-in Caregivers who opt into this litigation are entitled to compensation at proper overtime pay for furnishing food and lodging and to compensation for all hours worked including overtime hours worked, liquidated damages, attorneys' fees and court costs.

**COUNT TWO:**          *Nnyana Masoloko and Kefilwe Lekuntwane, individually and on behalf of others similarly situated v. Your Family Home Care, LLC:* **VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. Section 31-58,** *et seq.*

118. Based on the foregoing, Defendant Your Family Home Care, LLC's conduct in this regard was a violation of the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

119. Accordingly, Plaintiffs and all other live-in Caregivers in Connecticut are entitled to compensation at proper overtime pay for furnishing food and lodging and to compensation for all hours worked including overtime hours worked, penalty damages, attorneys' fees and court costs.

**COUNT THREE:** *Nnyana Masoloko and Kefilwe Lekuntwane, individually and on behalf of others similarly situated v. Jennifer Ross***: VIOLATION OF THE FAIR LABOR STARDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

120. Based on the foregoing, Defendant Jennifer Ross's conduct in this regard was a violation of Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

121. As owner of Your Family Home Care, LLC, she is the "ultimate responsible authority" and the cause for these violations.

122. 121. Defendant Jennifer Ross is liable to Plaintiffs, and all other similarly situated live-in Caregivers who opt into this litigation for compensation at proper overtime rate for furnishing food and lodging and for compensation for all hours worked including overtime hours worked, liquidated damages, attorneys' fees and court costs.

**COUNT FOUR:** *Nnyana Masoloko and Kefilwe Lekuntwane, individually and on behalf of others similarly situated v. Jennifer Ross:* **VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. section 31-58,** *et seq.*

123. Based on the foregoing, Defendant Jennifer Ross's conduct in this regard was a violation of the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

124. As owner of Your Family Home Care, LLC, she is the "ultimate

responsible authority" and the cause for these violations.

125.    Defendant Jennifer Ross is liable to Plaintiffs, and all other live-in Caregivers for compensation at proper overtime pay for furnishing food and lodging and for compensation for all hours worked including overtime hours worked, penalty damages, attorneys' fees, and court costs.

**COUNT FIVE:**    *Nnyana Masoloko and Kefilwe Lekuntwane, individually and on behalf of others similarly situated v. Rachel Faith Lorenzen*: **VIOLATION OF THE FAIR LABOR STARDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

126.    Based on the foregoing, Defendant Rachel Faith Lorenzen's conduct in this regard was a violation of Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*.

127.    As owner of Your Family Home Care, LLC, he is the "ultimate responsible authority" and the cause for these violations.

128.    Defendant Rachel Faith Lorenzen is liable to Plaintiffs, and all other similarly situated live-in Caregivers who opt into this litigation for compensation at proper overtime rate for furnishing food and lodging and for compensation for all hours worked including overtime hours worked, liquidated damages, attorneys' fees and court costs.

**COUNT SIX:**    *Nnyana Masoloko and Kefilwe Lekuntwane, individually and on behalf of others similarly situated v. Rachel Faith Lorenzen :* **VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. section 31-58,** *et seq.*

129.    Based on the foregoing, Defendant Rachel Faith Lorenzen's conduct in this regard was a violation of the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

130.    As owner of Your Family Home Care, LLC, she is the "ultimate responsible authority" and the cause for these violations.

131.     Defendant Rachel Faith Lorenzen is liable to Plaintiffs, and all other live-in Caregivers for compensation at proper overtime pay for furnishing food and lodging and for compensation for all hours worked including overtime hours worked, penalty damages, attorneys' fees, and court costs.

**COUNT SEVEN:**     *Nnyana Masoloko and Kefilwe Lekuntwane, individually and on behalf of others similarly situated v. Delroy Ross*:  **VIOLATION OF THE FAIR LABOR STARDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

132.     Based on the foregoing, Defendant Delroy Ross's conduct in this regard was a violation of Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*.

133.     As owner of Your Family Home Care, LLC, he is the "ultimate responsible authority" and the cause for these violations.

134.     Delroy Ross is liable to Plaintiffs, and all other similarly situated live-in Caregivers who opt into this litigation for compensation at proper overtime rate for furnishing food and lodging and for compensation for all hours worked including overtime hours worked, liquidated damages, attorneys' fees and court costs.

**COUNT EIGHT:**     *Nnyana Masoloko and Kefilwe Lekuntwane, individually and on behalf of others similarly situated v. Delroy Ross:* **VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. section 31-58,** *et seq.*

135.     Based on the foregoing, Defendant Delroy Ross's conduct in this regard was a violation of the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

136.     As owner of Your Family Home Care, LLC, he is the "ultimate responsible authority" and the cause for these violations.

137.     Defendant Delroy Ross is liable to Plaintiffs, and all other live-in

Caregivers for compensation at proper overtime pay for furnishing food and lodging and for compensation for all hours worked including overtime hours worked, penalty damages, attorneys' fees, and court costs.

## DEMAND FOR RELIEF

Plaintiffs claim:

a. Designation of this action as a collective action pursuant to the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

b. Certification of the Connecticut class action pursuant to Fed. R. Civ. P. 23(b)(3) and the appointment of Plaintiffs and her counsel to represent those classes;

c. An award of unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

d. An award of unpaid overtime wages under the Connecticut Minimum Wage Act, C.G.S. § 31-68;

e. An award of liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

f. An award of penalty damages under Connecticut Minimum Wage Act, C.G.S. § 31-68;

g. Attorneys' fees under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

h. Attorneys' fees under the Connecticut Minimum Wage Act, C.G.S. § 31-68;

i. Interests and costs;

j. Injunctive relief in the form of an order directing Defendants to comply with the Connecticut Minimum Wage Act; and

k. Such other relief as in law or equity may pertain.

**<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury for all issues so triable.

> Nnyana Masoloko and Kefilwe Lekuntwane,
> individually and on behalf of other
> similarly situated individuals

By:<u>//s// ct05114</u>
Nitor V. Egbarin, ct05114
Law Office of Nitor V. Egbarin, LLC
100 Pearl Street, 14th Floor
Hartford, CT  06103-3007
Tel: (860) 249-7180
Fax: (860) 408-1471
E-mail: <u>NEgbarin@aol.com</u>
Their Attorney